IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-01471-D-BM

| | | |
|---|---|---|
| MICHELLE VANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| MICHELLE A. KING, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Michelle Vann ("Plaintiff" or, in context, "Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). This matter is before the court on Plaintiff's brief [DE-10] ("Pl.'s Brief") seeking judgment in her favor, Defendant's brief [DE-12] in opposition ("Def.'s Brief"), and Plaintiff's reply brief [DE-13] ("Pl.'s Reply"). The parties have fully briefed this matter pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and this case is ripe for adjudication. The briefs were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1). Having reviewed and considered the record, the administrative transcript, the briefs submitted by the parties, and the applicable law, it is recommended that Plaintiff's brief [DE-10] be denied, Defendant's brief [DE-12] be allowed, and the final decision of the Commissioner be upheld.

## I. STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability, DIB, and SSI on March 3, 2021, alleging disability beginning November 1, 2020. Transcript of Proceedings ("Tr.") 98,

243-51.  Her claim was denied initially.  Tr. 75-98, 145-54.  Plaintiff filed a request for reconsideration (Tr. 155), and was denied upon reconsideration on June 13, 2022 (Tr. 99-138).  On July 13, 2022, Plaintiff requested a hearing before the Administrative Law Judge ("ALJ").  Tr. 169-70.  A hearing before the ALJ was held on January 23, 2023, at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified.  Tr. 41-74.  On April 12, 2023, the ALJ issued a decision denying Plaintiff's request for benefits.  Tr. 14-40.

On April 21, 2024, Plaintiff requested a review of the ALJ's decision by the Appeals Council.  Tr. 237-39.  On September 5, 2023, the Appeals Council denied Plaintiff's request for review.  Tr. 1-6.  Plaintiff then filed a complaint in this court seeking review of the now-final administrative decision.

## II.  STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance."  *Laws*, 368 F.2d at 642.  "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the

2

[Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

Where the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *Felts v. Astrue*, No. 1:11-CV-00054, 2012 WL 1836280, at *1 (W.D. Va. May 19, 2012) (quoting *Wilkins v. Sec'y, Dep't of Health & Hum. Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2.

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity ["SGA"]," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an

3

applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and §§ 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(4), 416.920a(e)(4).

## IV.  ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. Tr. 35.

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful employment since November 1, 2020, the alleged onset date. Tr. 19.

Next, at step two, the ALJ determined Plaintiff had the following severe impairments: fracture of left lower extremity status post intramedullary nailing of the tibial shaft; hyperlipidemia; anxiety; and unspecified neurodevelopmental disorder with low intelligence quotient. Tr. 20. However, at step three, the ALJ concluded these impairments, both physical and mental, were not severe enough, either individually or in combination, to meet or medically equal

4

one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 20.

Applying the technique prescribed by the regulations, the ALJ found that Plaintiff's mental impairments have resulted in moderate limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself.  Tr. 20-22.

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, finding Plaintiff had the ability to perform light work[1] with the following limitations:

> [S]he must be able to alternate position for up to five minutes after every one hour of standing and/or walking.  She can frequently push, pull, and operate foot controls with the left lower extremity.  She can occasionally climb, balance, stoop, kneel, crouch, and crawl.  She can perform simple tasks and use judgment to make simple, work-related decisions.  She can tolerate frequent interaction with supervisors and occasional interaction with coworkers and the general public.  She can tolerate occasional changes to simple work.

Tr. 24.

In making this assessment, the ALJ found Plaintiff's statements about her limitations not entirely consistent with the medical evidence and other evidence in the record.  Tr. 25.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time."  20 C.F.R. §§ 404.1567(b), 416.967(b).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a), 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996).  "Occasionally" generally totals no more than about 2 hours of an 8-hour workday.  S.S.R. 96-9p, 1996 WL 374185, at *3.  "Sitting" generally totals about 6 hours of an 8-hour workday. *Id.*  A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of any past relevant work.  Tr. 33.  Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff is capable of making an adjustment to other work that exists in significant numbers in the national economy.  Tr. 33-34.

## V.  DISCUSSION

Plaintiff contends that the ALJ did not account for Plaintiff's moderate limitation in her ability to concentrate, persist, or maintain pace ("CPP") in the RFC assessment and did not adequately explain why such limitations were not necessary.  Pl.'s Brief [DE-10] at 1.  The court disagrees.

Specifically, Plaintiff argues that under *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015), the RFC limitations to performing simple tasks, making simple work-related decisions, interacting frequently with supervisors, interacting occasionally with coworkers and supervisors, and tolerating occasional changes to simple work, do not appropriately account for Plaintiff's moderate limitation in the ability to CPP.  *Id.* at 12.  Plaintiff also appears to reason that because the ALJ discussed (i) the limitations of frequent interaction with supervisors and occasional interaction with co-workers and the general public in the context of Plaintiff's moderate limitations in interacting with others, and (ii) the limitation of only occasional changes to simple work and making simple work-related decisions in the context of Plaintiff's moderate limitations with adapting/managing stress, there were no express limitations designed to accommodate Plaintiff's moderate limitation in CPP.  *See id.* at 12-13.

The Commissioner argues that "[t]here is no inherent discrepancy between a 'moderate' rating in CPP, on the one hand, and the ALJ's conclusion that Plaintiff could perform the limited range of simple tasks (with additional limitations) described in the [RFC], on the other."  Def.'s

6

Brief [DE-12] at 9.  The Commissioner notes that under *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020), there is "no 'categorical rule' about the specific limitations required for a claimant with a moderate rating in any particular area of mental functioning."  Def.'s Brief [DE-12] at 9.

In *Mascio*, the Fourth Circuit held "that an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'"  *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)).  Specifically, the court found that "the ability to perform simple tasks differs from the ability to stay on task[,]" and "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace."  *Id*.  However, the Fourth Circuit does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC."  *Shinaberry*, 952 F.3d at 121.  Instead, the Fourth Circuit notes "that 'an ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation' in the claimant's RFC."  *Id.* (quoting *Mascio*, 780 F.3d at 638) (alteration in original).  "For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work, in which case it would [be] appropriate to exclude it from the hypothetical tendered to the vocational expert."  *Id.* (alterations in original) (citations omitted).  Yet, without such explanation by the ALJ, remand is required.  *Williams v. Saul*, No. 4:20-CV-92-FL, 2021 WL 3399820, at *4 (E.D.N.C. June 16, 2021) (citing *Mascio*, 780 F.3d at 638); *see also Shannon R. v. Kijakazi*, 2022 WL 636638, at *9–10 (W.D. Va. Mar. 4, 2022) (finding that the ALJ "was required either to include specific work-related restrictions within her RFC finding to accommodate for such 'moderate' CPP limits, or to explain why such limits did not translate into [the claimant's] RFC."); and *Linda W. v. Saul*, 2021 WL 930274, at *4–6 (W.D. Va.

7

Feb. 22, 2021) ("[T]he ALJ failed to draw an explicit conclusion or satisfactorily explain how [the claimant's] [moderate limitations in maintaining CPP] affect her ability to perform job-related tasks for a full eight-hour workday.").

Here, when discussing Plaintiff's moderate limitations in CPP, the ALJ noted Plaintiff's reports of "problems with concentration and comprehension." Tr. 21. The ALJ also noted that "[d]uring the initial psychological consultative examination, [Plaintiff] struggled with attention and concentration throughout the examination and was easily distracted and had difficulty maintaining focus on examination content." Tr. 21-22. The ALJ appears to connect Plaintiff's difficulties in concentrating with the mental exertion required in the task. Specifically, the ALJ provides that "[d]uring the subsequent psychological consultative examination, [Plaintiff] demonstrated adequate attention and concentration throughout the examination but had difficulty performing mental status exam cognitive tasks requiring working memory and quickly would give up." Tr. 22.

In her written decision, the ALJ discusses that during a second psychological consultative examination with Michael Palanza, MA LPA ("LPA Palanza"), the test of Plaintiff's processing speed level, which measures Plaintiff's "capacity to concentrate, persist, or maintain pace[, *i.e.*, CPP]", produced a response score was "within the range of normal limits compared with her same-age peers" and "was greater than or equal to 60% of the scores in the normative group." Tr. 28. In contrast, the test of Plaintiff's executive functioning level, which measures her "capacity to perform complex cognitive abilities, including planning, prioritizing, organizing, decision making, task switching, responding to feedback, correcting errors, inhibiting behavior, and mental flexibility . . . was greater than or equal to only 10% of the scores in the normative group." Tr. 29 (citing Tr. 472).

The ALJ also notes LPA Palanza's findings which juxtapose "adequate concentration, persistence and pace based on her mental status response" with a likelihood of "difficulty performing tasks requiring complex cognitive abilities." *See* Tr. 29 (citing Tr. 105).

The ALJ's decision taken as a whole indicates that Plaintiff's moderate limitation in CCP is largely based on Plaintiff's struggles to concentrate on complex tasks. While the ALJ acknowledges that Plaintiff "struggled with attention and concentration [during the initial psychological consultative examination] and was easily distracted and had difficulty maintaining focus on examination content," she also notes that Plaintiff was able to complete a significant number of the tasks. Tr. 21-22. Elsewhere, the ALJ cites evidence that supports Plaintiff's ability to complete simple tasks and make simple decisions, including "personal care tasks", "prepar[ing] simple meals" and taking short drives. Tr. 22.

Accordingly, because the ALJ's decision provides a logical bridge as to how a limitation to simple tasks accommodates Plaintiff's specific moderate limitations in CPP, the undersigned finds that the ALJ's decision is more akin to the scenario in *Shinaberry*, 952 F.3d at 121, where the ALJ provided sufficient explanation for why greater limitations were not necessary in the RFC, than *Mascio,* where the ALJ attempted to accommodate Plaintiff's moderate limitation in CCP throughout simple, routine tasks or unskilled work, without sufficient explanation. 780 F.3d at 638.

Moreover, unlike *Mascio*, Plaintiff's ability to stay on task does not appear to be a focus of inquiry. Plaintiff cites *Mascio's* guidance that "[t]he ability to perform simple tasks differ[s] from the ability to stay on task." Pl.'s Brief [DE-10] at 11 (citing *Mascio*, 780 F.3d at 638). However,

9

Plaintiff does not argue that she suffers from an inability to stay on task.[2]  *See generally* [DE-10].

Similarly, Plaintiff does not mention an inability to stay on task in her testimony at the

administrative hearing before the ALJ.  Rather, Plaintiff's testimony at the administrative hearing

before the ALJ focuses her mental limitations on problems with "comprehension" or

"understand[ing]" (Tr. 52), "a learning disability" (Tr. 53), and anxiety about people and traffic

(Tr. 55).  While Plaintiff testified that it sometimes took her 30 minutes to recover from feelings

of anxiety, stress, and anger (Tr. 57), Plaintiff reported that she was anxious during the

administrative hearing before the ALJ (Tr. 55) and yet was able to answer the ALJ's simple

questions and complete her testimony.  *See* Tr. 30 (ALJ noting that Plaintiff was "able to interact

with the [ALJ] during the hearing without issue.").

   In her reply brief, Plaintiff notes that her functional report provides that she can only pay

attention for 15 minutes.  *See* Pl.'s Reply [DE-13] at 2 (citing Tr. 284).  However, arguments raised

for the first time in reply briefs are generally waived, because they deprive the opposing party of

an opportunity to respond.  *See Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722

F.3d 591, 603 n. 13 (4th Cir. 2013); *Clendening v. United States*, 19 F.4th 421, 431 n. 7 (4th Cir.

2021) ("A party waives an argument by raising it for the first time in its reply brief."); *Hallinan v.*

*Scarantino*, No. 5:20-CT-3333-FL, 2022 WL 945590, at *10 (E.D.N.C. Mar. 29, 2022) ("The court

does not typically consider arguments raised for the first time on reply.").  Furthermore, on the

same form where Plaintiff reports that she can only pay attention for 15 minutes, Plaintiff

---

[2] Plaintiff's brief notes in the statement of facts that Plaintiff "quickly gave up" on tasks requiring working memory.  Pl.'s Brief [DE-10] at 6.  However, Plaintiff does not otherwise tie this evidence to an argument that Plaintiff struggled to stay on task.  *Padilla-Ruiz v. Commc'n Techs., Inc.*, 793 F. App'x 200, (Mem)–201 (4th Cir. 2020) ("A party waives an argument . . . by failing to develop its argument—even if its brief takes a passing shot at the issue.") (quoting *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017)).  Moreover, as explained above, the ALJ's findings that this evidence suggested difficulties in concentrating on complex tasks, which could be accommodated by limiting Plaintiff to simple tasks with additional limitations, as discussed above.

10

represents that she is able to finish what she starts.[3]  Tr. 284.  This could feasibly be interpreted as indicating that Plaintiff's difficulties in paying attention do not impact her ability to stay on task. Furthermore, while there could be various explanations to reconcile these two statements, the ALJ's implicit interpretation that Plaintiff can stay on task for simple tasks is supported by substantial evidence.  *See Mastro*, 270 F.3d at 176 (noting that "[i]n reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence.") (quotations omitted).  Accordingly, to the extent that Plaintiff's singular reference to inability to pay attention for longer than 15 minutes constitutes "contradictory evidence," *see Mascio*, 780 F.3d at 636, the undersigned finds that the ALJ's decision, taken as a whole, provides sufficient explanation to discern the ALJ's rationale for not including any additional limitations to accommodate an inability to stay on task for the reasons discussed above.  *Williams v. Saul*, No. 5:18-CV-394-FL, 2019 WL 4567547, at *3 (E.D.N.C. Sept. 20, 2019) ("[T]he ALJ sufficiently discussed conflicting evidence in the record for the court to discern an 'accurate and logical bridge from the evidence to [the ALJ's] conclusion.'") (quoting *Monroe*, 826 F.3d at 189).  The undersigned does not find that remand is required for these issues based on Plaintiff's arguments.

## VI.  CONCLUSION

For the reasons stated above, IT IS RECOMMENDED that Plaintiff's brief [DE-10] be DENIED, Defendant's brief [DE-12] be ALLOWED, and the final decision of the Commissioner be UPHELD.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel.  Each party shall have until **February 24, 2025**

---

[3] The ALJ expressly cites the exhibit that includes both of these statements when she notes that Plaintiff "reported problems with memory, comprehension, concentration, understanding, and following instructions."  Tr. 20.

to file written objections to this Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by the **earlier of 14 days from the filing of the objections or March 3, 2025**.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this 10th day of February, 2025.

_____
Brian S. Meyers
United States Magistrate Judge

12